IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**SCOTT JONES**                                                                                           **PLAINTIFF**

v.                                       No. 2:16-CV-00070-BRW-BD

**NANCY A. BERRYHILL, Acting Commissioner,**
**Social Security Administration**                                                             **DEFENDANT**

### RECOMMENDED DISPOSITION

### Instructions

The following Recommended Disposition ("Recommendation") has been sent to Judge Billy Roy Wilson.  You may file written objections to all or part of this Recommendation. If you do so, those objections must specifically explain the factual or legal basis for your objection.  Objections must be received by the Clerk of this Court within fourteen days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### Background

Scott Jones applied for social security disability benefits on April 30, 2013, alleging an onset date of November 13, 1995.  (R. at 55).  A hearing was held, but Mr. Jones waived his right to appear.  (R. at 21).  The administrative law judge (ALJ) denied benefits, and the Appeals Council denied review.  (R. at 6).  Mr. Jones then requested judicial review.

For the reasons stated below, the Commissioner's decision should be affirmed.

## I. The Commissioner's Decision

The ALJ found that Mr. Jones had the following severe impairments: depression, anxiety, history of polysubstance abuse, back pain, personality disorders, paranoia, and seizures. (R. at 23). The ALJ determined that Mr. Jones had the residual functional capacity (RFC) to perform light work, with the ability to lift and carry 20 pounds occasionally and 10 pounds frequently. (R. at 24). In addition to exertional limitations, the ALJ found non-exertional limitations: Mr. Jones could perform simple, unskilled, or rote work; could understand, follow, and remember concrete instructions; should be limited to superficial contact with supervisors, co-workers, and the public; and should not handle money, due to a history of drug use and incarceration. (R. at 24). Mr. Jones had no past relevant work. (R. at 29).

After hearing testimony from a vocational expert (VE), the ALJ found that Mr. Jones could perform jobs that existed in sufficient numbers, including production assembly or poultry deboner. (R. at 30).

## II. Discussion

Mr. Jones does not identify any specific error committed by the ALJ. Instead, he argues generally that he is disabled due to various conditions and recounts findings from the medical records. The Commissioner contends that substantial evidence on the record as a whole supports the ALJ's decision.

The Court reviews the record to determine whether substantial evidence supports the Commissioner's findings. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" means "enough that a reasonable mind would find it adequate to

support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). The Commissioner's decision is supported by ample evidence in the record as a whole.

Mr. Jones presented to Helena Regional Medical Center's Emergency Department on January 31, 2012, with complaints of pain in multiple areas. (R. at 178). On examination, however, he showed no evidence of trauma; and he had normal vital signs and normal range of motion. (R. at 179). Mr. Jones was discharged after a Toradol injection. (R. at 179–80).

Thomas O. Bailey, M.D., performed a physical examination of Mr. Jones on June 12, 2013, and found only mild to moderate limitations. (R. at 183–87). Dr. Bailey diagnosed uncontrolled hypertension, type 2 diabetes mellitus, seizure disorder, and paranoia/delusional disorder. (R. at 187). At the examination, however, Mr. Jones had a blood pressure of 126/87 and normal range of motion. (R. at 184–85). The record also contains no record of treatment for hypertension and diabetes. Dr. Bailey's diagnoses, as observed by the ALJ, seemed to be based on Mr. Jones's own statements. (R. at 29).

Mr. Jones has had three mental diagnostic evaluations with Charles Spellman, Ph.D. At the first, Mr. Jones claimed that he did not know how to cook, make a sandwich, or pour a bowl of cereal. (R. at 268). He stated that he quit school after the seventh grade, had no children, and could not dress himself. (R. at 268). Dr. Spellman conducted intelligence testing, but found the results to be invalid due to malingering. (R. at 269).

Dr. Spellman performed a second evaluation on April 23, 2012. (R. at 303). At

that examination, Mr. Jones reported that his disability was that he "would rather sale (sic) drugs than work." (R. at 303). Mr. Jones contradicted his prior statements and told Dr. Spellman that he had two children and had attended college. (R. at 304). Dr. Spellman noted that, during intelligence testing, Mr. Jones intentionally answered all questions incorrectly on the first subtest and seemed to give up easily on other tests. (R. at 305). Dr. Spellman opined that Mr. Jones could communicate intelligibly and effectively, cope with the cognitive demands of work like tasks, sustain concentration on tasks, sustain persistence in completing tasks, and complete tasks in an acceptable timeframe with supervision. (R. at 306).

At the third mental diagnostic evaluation, Dr. Spellman asked Mr. Jones why he was disabled, and Mr. Jones "gave a little shrug with a slight smile on his face." (R. at 189). When asked his height, weight, and age, he shrugged again. (R. at 189). When Dr. Spellman asked how they could proceed with the evaluation if Mr. Jones would not talk, Mr. Jones again shrugged. (R. at 189). After Dr. Spellman asked if Mr. Jones "had any idea how we might pull this off," Mr. Jones shrugged once more. (R. at 189). Dr. Spellman then released Mr. Jones, who shrugged and left, seeming "reasonably happy." (R. at 189).

On March 19, 2010, Mr. Jones presented to Michael Pettis, LCSW, who noted that Mr. Jones appeared to be malingering. (R. at 317). Mr. Jones reported that he never used alcohol or illicit drugs. His brother reported that Mr. Jones frequently used both alcohol and cannabis. (R. at 317). Mr. Pettis noted that there was "credible evidence that [Mr. Jones] is dishonest." (R. at 317).

The record does reflect that Mr. Jones has sought treatment for some mental health issues.  Nothing in the objective medical evidence, however, supports the extreme degree of limitation that Mr. Jones claims.  In fact, the record contains multiple suggestions by mental health professionals that Mr. Jones is not a credible source.  Mr. Jones's subjective claims of disability are simply not supported by the evidence in the record.

### III.  Conclusion

The ALJ's decision is supported by substantial evidence on the record as a whole and is not based on legal error.  Accordingly, the decision of the Commissioner should be affirmed.

DATED this 2nd day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE